UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CURTIS L. SMITH, | : | CIVIL ACTION NO. 3:12-cv-524 |
| Plaintiff | : | (Judge Nealon) |
| v. | : | |
| CHARLES E. SAMUELS, JR., ET AL., | : | FILED SCRANTON |
| Defendants | : | SEP 1 2 2013 |

**MEMORANDUM**

## Background

Curtis L. Smith, an inmate presently confined at the United States Penitentiary, Atlanta, Georgia (USP-Atlanta) filed his pro se civil rights action while previously confined at the Allenwood Federal Correctional Institution, White Deer, Pennsylvania (FCI-Allenwood). An Amended Complaint was subsequently filed by Smith. See (Doc. 10).

Named as Defendants are the Federal Bureau of Prisons (BOP) and its Director Charles Samuels; the Federal Correctional Institution, Elkton, Ohio (FCI-Elkton); the Jerome Combs Detention Center and Kanakee County, Illinois; FCI-Allenwood; and the following officials at FCI-Allenwood: Associate Warden David Kranzel, Captain Christopher Bergan, Lieutenant Raymond Ross, Physician's Assistant (PA) Ernesto Roces, "Brown", as well as Senior Officers Randy Graham, Raymond Alexander, Daniel Lozano and Jose Rosario. (Doc. 10, ¶ III).

It is undisputed that Smith was confined at FCI-Elkton from June 3, 2009, to March 2, 2010. He was next held at FCI-Allenwood from March 15, 2010, through April 30, 2012. Plaintiff was thereafter transferred to USP-Atlanta. The initial portion of the Amended Complaint claims that Smith was provided with ineffective medication and inadequate medical

care by the racist all white medical staff at FCI-Allenwood. Specifically, Plaintiff states that he suffers from bilateral sacroiliitis and myofascial pain syndrome as the result of having bullet fragments lodged in his spinal cord. His Amended Complaint initially contends that his previously prescribed self carry "Transcutaneous Electrical Nerve Stimulator (TENS) unit" was allegedly destroyed by Property Room Officer Graham. (Doc. 10, ¶ IV(2)).

Second, Defendant PA Roces purportedly retaliated against Plaintiff on March 10, 2012, by refusing to order a replacement TENS unit or a flexible back support brace for Smith. Moreover, medications which were previously ordered for Plaintiff's treatment and pain management were not provided and instead he was given ineffective experimental drugs. It is also alleged that Smith developed an ear infection which went untreated by Roces.

The Amended Complaint next contends that due to actions taken by Warden Kranzel and Lieutenant Ross, Plaintiff was denied access to personal legal documents while confined in the FCI-Allenwood Special Housing Unit (SHU). In addition, Smith maintains that his request to have a typewriter placed in the SHU was improperly denied and he was without access to the SHU computer since January 10, 2012. Plaintiff indicates that he required the above described items to file a petition for writ of certiorari to the United States Supreme Court as well as an appeal to the United States Court of Appeals.

Plaintiff next contends that on March 3, 2012, monies were improperly taken from his inmate account for payments pursuant to the Prison Litigation Reform Act (PLRA) in further violation of his right of access to the courts by two prison officials who are not listed as being defendants (Hokeman and Sieogs). See id. at ¶ 12. It is alleged that Smith was denied insulated blankets and his thermal underpants by Warden Krantzel while housed in the SHU. Defendant

Rosario purportedly retaliated against Plaintiff by placing him in an extra cold cell which lacked sufficient lighting for a one week period. Finally, Plaintiff asserts that his SHU stay was improperly extended by approximately one month without justification.

The remaining portion of the Amended Complaint states that Smith has been routinely sexually abused in that correctional officers at FCI-Allenwood (specifically Defendant Alexander), FCI-Elkton and Kanakee County Correctional Facility required him to undergo strip searches which constituted sexual abuse. The Amended Complaint seeks injunctive relief.

Presently pending is Defendants' motion to dismiss and for summary judgment. See (Doc. 25). Although Plaintiff was granted an enlargement of time in which to do so, he has not submitted an opposing brief. Rather, Smith has filed what appears to be proposed Second and Third Amended Complaints, a request to amend, and supporting exhibits, (Docs. 36-38).

**Discussion**

**Requests to Amend Complaint**

Federal Rule of Civil Procedure 15(a) provides:

**(a) Amendments Before Trial.**

> (1) **Amending as a matter of course**. A party may amend its pleading once as a matter of course:
> (A)  21 days after serving it;
> (B)  if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Based upon an application of Rule 15(a), Plaintiff cannot file a second or third amended complaint as a matter of course because an amended complaint was previously filed. Rule 15(a)(2) additionally provides that "[t]he court should freely give leave [to amend] when justice so requires." Furthermore, pro se litigants are afforded liberal treatment, Haines v. Kerner, 404

U.S. 519, 520 (1972), and pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

It is noted that this action was initiated in March, 2012, and Smith's pending requests to file a second and/or third amended complaint were not filed until January 2013. Second, during the intervening period, Plaintiff filed an Amended Complaint and Defendants have submitted a dispositive motion

A review of Smith's proposed amended complaints reveals that they seek to add new defendants who are not located within the confines of the Middle District of Pennsylvania and to add entirely new claims based on alleged events which also did not take place within the confines of this judicial district.

Given the multitude of civil rights claims asserted in the proposed Amended Complaints; the advanced stage of these proceedings; and the fact that the proposed amended complaints are not limited to providing clarification as to the pending claims, would name new defendants, and would assert some entirely new claims, the interests of judicial economy and efficiency would not be best served by allowing Smith to file a second or third amended complaint. Finally, although liberal treatment must be afforded to pro se litigants, a careful review of Plaintiff's pending request to amend and his proposed amended complaints shows that they do not address the arguments for dismissal/summary judgment presently pending before this Court. Consequently, Plaintiff's requests to amend will be denied based upon an application of the standards announced in Alston.

**Motion to Dismiss/Summary Judgment**

Defendants claim entitlement to entry of dismissal and summary judgment on the grounds that: (1) the BOP is not a properly named defendant; (2) Kanakee County, Illinois Detention Center, FCI-Allenwood and FCI-Elkton are not proper defendants; (3) there are no allegations that Defendants Ebbert, Samuels, and Bergan were personally involved in any unconstitutional acts; (4) Smith failed to exhaust his available administrative remedies; (5) the claims for declaratory and injunctive relief are official capacity claims which are barred by the doctrine of sovereign immunity; and (6) Defendants are entitled to qualified immunity because the Amended Complaint fails to allege any violation of Smith's constitutional rights.

**Standard of Review**

Defendants' pending dispositive motion is supported by evidentiary materials outside the pleadings. Federal Rule of Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

FED. R. CIV. P. 12(b)(d). The Court will not exclude the evidentiary materials accompanying Defendants' motion. Thus, the motion will be treated as solely seeking summary judgment.

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**BOP**

Defendants initially contend that because it is a federal agency the BOP is not a properly named defendant in this action. (Doc. 27, p. 13)

6

It is well settled that governmental entities are not persons and therefore not proper defendants in a federal civil rights action. Hindes v. F.D.I.C., 137 F.3d 148, 159 (3d Cir. 1998)(stating that a federal agency is not a "person" subject to civil rights liability, whether or not it is in an alleged conspiracy with state actors). See also Accardi v. United States, 435 F. 2d 1239, 1241 (3d Cir. 1970); Figueroa-Garay v. Municipality of Rio Grande, 364 F. Supp. 2d 117, 128 (D. P. R. 2005). Similarly, in Shannon v. U.S. Parole Commission, 1998 WL 557584 *3 (S.D.N.Y. Sept. 2, 1998), the district court stated that civil rights claims "may not be maintained against federal agencies." See also Duarte v. Bureau of Prisons, 1995 WL 708427 *2 (D. Kan. Nov. 3, 1995) (concluding, the BOP "is not a proper defendant in a Bivens action.").

Based on an application of the above standards, the BOP is not a properly named defendant and is therefore entitled to entry of summary judgment.

**Kanakee County Detention Center/FCI-Allenwood/ FCI-Elkton**

Three correctional facilities, Jerome Combs/Kanakee County Detention Center, FCI-Allenwood and FCI-Elkton are also listed as Defendants in the Amended Complaint. Defendants' supporting brief implies that these three prisons are not individuals subject to civil rights liability.

Courts have repeatedly recognized that a prison or correctional facility is not a person for purposes of civil rights liability. See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); Philogene v. Adams County Prison, Civ. No. 97-0043, slip op. at p. 4 (M.D. Pa. Jan. 30, 1997) (Rambo, C.J.); Sponsler v. Berks County Prison, Civ. A. 95-1136, 1995 WL 92370, *1 (E.D. Pa. Feb. 28, 1995). Pursuant to the above standards, Kanakee County Detention Center, FCI-Allenwood, and FCI-Elkton are clearly not persons and therefore not subject to civil rights

7

liability. See Thompkins v. Doe, No. 99-3941, slip op. at 3 (3d Cir. March 16, 2000). Summary judgment will be granted in favor of these three defendants.

**Personal Involvement**

Defendants next contend that the Amended Complaint "fails to specifically allege any personal involvement by Defendants Ebbert[1], Samuels and Bergan in the alleged constitutional deprivation." (Doc. 27, p. 16).

Civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Prisoners have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure

---

[1] It is initially noted that there is no defendant named Ebbert listed in either the caption or the body of the Amended Complaint. Accordingly, the argument for dismissal raised on behalf of that individual need not be addressed.

8

confers no liberty interest on a prisoner.")). While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (explaining that federal grievance regulations providing for an administrative remedy procedure do not create a liberty interest in access to that procedure). Accordingly, any attempt by a prisoner to establish liability against a correctional official based upon his/her handling of administrative grievances or complaints does not support a constitutional claim. See Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005) (holding that involvement in post-incident grievance process is not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (finding that because a prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, a prison official's failure to comply with grievance procedure is not actionable). Thus, any attempt by Smith to set forth claims against Defendants Samuels and Bergan solely based upon any responses or lack of action to his administrative grievances is inadequate under Flick and Alexander.

BOP Director Samuels and FCI-Allenwood Captain Bergan are clearly employed in supervisory capacities. The only mention of Director Samuels in the Amended Complaint is in Plaintiff's request that the director be ordered to stop sexually harassing strip searches in the FCI-Allenwood SMU. (Doc. 1, p. 5, ¶ 23). Pursuant to the standards announced in Rode and Hampton, Plaintiff's action, to the extent that it seeks to establish liability against these two Defendants solely based upon their respective supervisory capacities within the BOP, cannot proceed. Because there is no allegation that Samuels ordered or acquiesced in the alleged

9

improper strip searches of the Plaintiff, such a <u>respondeat superior</u> type assertion is simply insufficient for establishing civil rights liability against Samuels.[2] Entry of summary judgment in favor of BOP Director Samuels is appropriate.

However, the Amended Complaint does include a claim that Captain Bergan and other Defendants falsely told Plaintiff that half his personal property, including his TENS unit and personal legal materials, had been stolen. (Doc. 1, p. 3. ¶ 7). As that contention adequately alleges personal involvement by Captain Bergan in conduct which could conceivably be found unconstitutional, Defendant Bergan's request for entry of summary judgment on the grounds of lack of personal involvement will be denied.

**<u>Administrative Exhaustion</u>**

Defendants' next argument seeks entry of summary judgment on the basis that Plaintiff failed to exhaust his available administrative remedies "with regard to any of his claims." (Doc. 27, p. 11).

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." <u>Porter v. Nussle</u>, 122 S.Ct. 983, 992 (2002); <u>Booth v. Churner</u>, 532 U.S. 731, 741 n.6 (2001). Claims for monetary relief are not

---

[2] It is also noted that any claim by Plaintiff for injunctive relief based upon improper cell searches conducted at his prior places of incarceration would be subject to dismissal on the basis of mootness.

excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000) (citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 549 U.S. 199, 219 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548 U.S. 81 (2006).

"There is no futility exception" to the exhaustion requirement." Brown v. Croak, 312 F.3d 109, 112 (3d cir. 2002) (citing Nyhuis, 204 F.3d at 75)). The Third Circuit Court of

11

Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006). The Court of Appeals has also rejected "'sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. See Jones, 549 U.S. at 216; Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(holding that a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). Rather, pursuant to the standards announced in Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.[3]

The BOP has a well-established three (3) step Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment. See 28 C.F.R. §§ 542.10-542.19. After attempting to informally resolve the issue, a BOP inmate can initiate the first step of the grievance process by submitting "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within twenty (20) calendar days "following the date on which the basis for the Request occurred." See 28 C.F.R. § 542.14(a). The Warden has twenty (20) calendar days from the date the Request or Appeal is filed in which to respond." See 28 C.F.R. § 542.18. If not satisfied with the Warden's response, an inmate may appeal (step two) on the appropriate form (BP-10) to the Regional Director within twenty (20) calendar days of the date

---

[3] In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

the Warden signed the response. See 28 C.F.R. § 542.15. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed (step three) on the appropriate form (BP-11) to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

A declaration under penalty of perjury submitted by FCI-Allenwood Senior Attorney Joseph McCluskey states that based on a review of the BOP's computerized records, Plaintiff initiated thirty (30) requests for administrative relief during the course of his federal confinement, twenty-nine (29) of those were filed after his arrival at FCI-Allenwood. (Doc. 26-1, ¶ 8). Thirteen (13) of those grievances regarded events which transpired at FCI-Elkton. (Id.). McCluskey avers that the remaining grievances concerned FCI-Allenwood. (Id.). However, according to McCluskey, none of those USP-Lewisburg related grievances were "fully and finally exhausted in that they were not addressed and denied or granted by the BOP Central Office on their merits. (Id. at ¶ 21.) Accompanying McCloskey's declaration are copies of the relevant institutional administrative remedy records.

Moreover, Plaintiff himself has admitted that he has failed to satisfy the exhaustion of administrative remedies requirement. Specifically, in his Amended Complaint, Smith acknowledges that although there was an available grievance procedure he failed to complete the grievance process with respect to his pending claims. See (Doc. 10, ¶ II).

Based upon McCloskey's declaration, the submitted BOP records, Plaintiff's admission that he failed to complete the grievance process, and his failure to oppose the pending non-

13

exhaustion argument, Defendants have satisfied their burden under <u>Williams</u> of establishing that Plaintiff's pending claims were not properly exhausted. Furthermore, because Smith has not made any viable showing that he should be excused from compliance with the exhaustion requirement regarding any of his unexhausted claims, entry of summary judgment on the basis of non-exhaustion is appropriate with respect to those claims. To hold otherwise, would clearly undermine the intent of the exhaustion requirement to afford correctional administrators the initial opportunity to discover and correct their own errors. See <u>Nyhuis v. Reno</u>, 204 F.3d 65, 75 (3d Cir. 2000).

In light of the Court's determination as to non-exhaustion, discussion of Defendants' additional summary judgment arguments is not required.

*[signature]*
**United States District Judge**

**DATE**: SEPTEMBER 12, 2013